IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

SEPTEMBER 1998 SESSION

FILED

November 20, 1998

Cecil Crowson, Jr.
Appellate Court Clerk



| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9711-CR-00491 |
| | ) | |
| | ) | Knox County |
| v. | ) | |
| | ) | Honorable Chester R. Mahood, Judge |
| | ) | (by designation) (at trial) |
| | ) | |
| | ) | Honorable Richard R. Baumgartner, Judge |
| JACK FRANKLIN, | ) | (Sentencing) |
| | ) | |
| Appellant. | ) | (Driving while under the influence of an |
| | ) | intoxicant, second offense; driving on a |
| | ) | revoked license) |

For the Appellant:

Mark E. Stephens
District Public Defender
   and
John Halstead
Assistant Public Defender
1209 Euclid Avenue
Knoxville, TN 37921
(AT TRIAL)

Mark E. Stephens
District Public Defender
   and
Paula R. Voss
John Halstead
1209 Euclid Avenue
Knoxville, TN 37921
(ON APPEAL)

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
      and
Elizabeth B. Marney
Assistant Attorney General of Tennessee
425 Fifth Avenue North
Nashville, TN 37243-0493

Randall E. Nichols
District Attorney General
      and
Marsha Selecman
Assistant District Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED:_____

CONVICTIONS AFFIRMED; REMANDED FOR NEW SENTENCING HEARING

Joseph M. Tipton
Judge

## O P I N I O N

The defendant, Jack Franklin, appeals as of right following his convictions by a jury in the Criminal Court of Knox County for driving while under the influence of an intoxicant (D.U.I.), second offense, a Class A misdemeanor, and driving on a revoked license (D.O.R.L.), a Class B misdemeanor. For the D.U.I. conviction, the defendant was sentenced to eleven months and twenty-nine days confinement to be served in the Knox County Jail, with all but ninety days suspended followed by nine months of supervised probation. He was also fined fifteen hundred dollars. For the D.O.R.L. conviction, he was sentenced to six months confinement, with all but ninety days suspended, the remainder to be served on supervised probation, and he was fined five hundred dollars. The jail time was to run concurrently, and the probation was to run consecutively. In this appeal, the defendant contends that the evidence is insufficient to support his conviction for D.U.I., the trial court erred in sentencing, and the trial court erred by denying his motion for a court reporter to be provided by the state. We affirm the convictions but remand the case for a new sentencing hearing.

Because the proceedings at trial were not transcribed, the only record available for our review is a Statement of the Evidence that was prepared by the defendant and approved by the state and the trial court. T.R.A.P. 24(c). At trial, Jerry Childress testified that at about 9:30 or 10:00 p.m. on December 31, 1993, he was at the Wal-Mart on Maynardville Highway when he caught a glimpse of the defendant's car and saw it hit another car. He said the defendant's car did not have on its headlights. He said he put on his emergency flashers and went to check on the defendant. He testified that the defendant was sitting behind the steering wheel, and there was no one else present in the car. He said there was not enough time for someone to have exited the car and left the scene. He testified that when he told the defendant to turn on his headlights, the defendant became irate and cursed him.

2

Childress said he determined that the defendant was not injured, and he moved away from the car. Childress said the defendant appeared to have been drinking, and he could smell alcohol coming from the defendant. He also said the defendant became irate when a police officer asked for the defendant's driver's license, and the defendant tried to pass the officer his Social Security card.

On cross-examination, Childress admitted that two of his sons were killed in single car accidents. He admitted that he often thought about the accidents in which his sons were killed, and this is probably why he paid close attention to the accident in the present case. He said the police did not interview him at the scene but took his name.

Sandra Massengill, a Tennessee State Trooper, testified that she arrived on the scene of the accident and saw the defendant's car in the southbound lane. She said the defendant was agitated when she spoke with him, and she suspected he had been drinking. She said the defendant was standing at the driver's side of his car, and she immediately smelled alcohol. She said she did not remember asking the defendant if he was the driver, although she said she probably did, and her paperwork listed the defendant as the driver. She testified that the defendant was belligerent and uncooperative, and he gave her his Social Security card instead of his driver's license. She said his eyes were red and watery, his speech was slurred, and his clothes were disheveled.

On cross-examination, Trooper Massengill said that she was not present at the time of the accident and did not see the accident occur. She said she did not see the defendant driving his car.

Trooper John Woods testified that the defendant was heavily intoxicated, and he could smell alcohol coming from the defendant. He said he could not understand everything the defendant was saying.

Trooper Vanessa Boles testified that when she arrived at the scene, there were people everywhere. She said the defendant was unruly and tried to pass his Social Security card when she asked for his driver's license. She said the defendant told her that no one else was with him, and he did not deny drinking. She said she asked the defendant to perform a heel-to-toe test, but he could not do it. A certified copy of the defendant's driving record was introduced into evidence, and the record showed that the defendant's license was revoked at the time of the accident. Trooper Boles stated that she did not fill out a D.U.I. report. She said the defendant was upset because the other car failed to yield and caused the accident.

The defendant presented two witnesses. Paul Flatford testified that he had known the defendant for about ten years but that they were acquaintances, not friends. He said he saw the defendant on the night of the accident. He said that as he was driving, he saw the defendant in the passenger side of a car, and a woman with dark hair was driving the car. He said the car's headlights were on. He said the defendant waved to him as he passed. He said the accident occurred a few seconds later when a small white car came across the road and was struck by the defendant's car. He said that because traffic was backed up, he went around the accident and went home. He admitted that he had talked to the defendant since the accident, but he said he did not ask the defendant who was driving. Flatford said he remembered the defendant saying that there was a woman driving.

Scott Day testified that he was driving down Maynardville Highway behind the defendant before the accident occurred. He said there were two people in the

4

defendant's car, and its headlights were lit. He said the driver was a female with short dark hair. He said that as they were proceeding down the road, a small white car pulled out from the intersection. Day testified that the defendant was the passenger in the car. He said that after the accident, the woman driving the car left and walked to another car. He said he left after determining that no one was injured. He said he learned the next morning that the defendant was looking for witnesses, and he notified the defendant through a friend that he had witnessed the accident. He said he had seen the defendant a couple of times since the accident. He also said he did not see the defendant at the scene of the accident.

In rebuttal, Trooper Boles testified that she did not recall seeing either Flatford or Day at the wreck. She admitted that she arrived at least five minutes after the wreck occurred. Trooper Massengill testified that the other car involved in the accident was blue, not white.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for D.U.I. Specifically, he argues that because the state presented only one eyewitness to the accident who was impeached, and the defendant presented two eyewitnesses, the weight of the evidence is insufficient. He also argues that the trial court should have set aside the verdict in its capacity as a thirteenth juror. We conclude that the evidence is sufficient to support the conviction for D.U.I.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence, but presume that

5

the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Viewing the evidence in this light, we conclude that it is sufficient. The state presented one eyewitness who testified that the defendant was driving the car and that the headlights were not on. The witness also testified that after the wreck, there was not enough time for someone to have exited the defendant's car and left the scene. Three state troopers testified that the defendant was intoxicated. One trooper testified that the defendant told her there was no one else in the car. Although the defense presented two witnesses who testified that a dark haired woman was driving the car, the jury was entitled to accredit the testimony of the state's witnesses and reject the testimony of the defense witnesses.

The defendant also contends that the trial court erred by denying him a new trial in its capacity as a thirteenth juror. Rule 33(f), Tenn. R. Crim. P., provides that the trial court may grant a new trial if it views the verdict to be contrary to the weight of the evidence. When a motion for a new trial is overruled without comment, approval of the verdict is presumed. See State v. Braden, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993). Furthermore, "once the trial court approves the verdict as the thirteenth juror and imposes judgment, the review of the evidence on appeal is quite limited, requiring the accrediting of the testimony of the witnesses for the state and the resolution of evidentiary conflicts in favor of the state." State v. Burlison, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993) (citation omitted). When viewed in this light, the record shows that the trial court denied the defendant's motion for a new trial, finding the evidence to be "adequate, if not overwhelming." We conclude that the trial court did not err by refusing to set aside the verdict or grant the defendant a new trial.

6

## II. SENTENCING

The defendant contends that his sentence is excessive. He argues that the trial court improperly sentenced him to more than the mandatory minimum sentence set by the legislature. He also contends that the trial court erred by requiring his probationary periods to run consecutively. The state argues that the sentence is proper.

Appellate review of misdemeanor sentencing is <u>de novo</u> on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d), -402(d). The "presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to T.C.A. § 40-35-401(d) note, the burden is now on the appealing party to show that the sentencing is improper. We note that there is no presumptive minimum sentence provided by law for misdemeanor sentencing. <u>See, e.g.</u>, <u>State v. Creasy</u>, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, in misdemeanor sentencing, the trial court must consider the purposes and principles of the Criminal Sentencing Reform Act of 1989. T.C.A. § 40-35-302(d).

Although the defendant argues that the length of his sentence is excessive, T.C.A. § 55-10-403(c) essentially mandates a maximum sentence for D.U.I., "with the only function of the trial court being to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended." <u>State v. Combs</u>, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996). Therefore, we must determine whether the trial court erred in concluding that alternatives to incarceration were not appropriate in this case.

In sentencing the defendant to eleven months and twenty-nine days with all but ninety days suspended for the D.U.I. conviction, the trial court stated that it was considering the defendant's prior convictions for felony assault and simple assault, and the circumstances of the offense, believing that it was an accident involving personal injury. The trial court also considered the need for deterrence and the fact that the defendant persisted in claiming that he was not driving the car.

We question the bases for the trial court's sentencing determinations.[1] There is no evidence in the record before us that the accident resulted in personal injury. Nor is there evidence in the record of the particularized need for deterrence within the jurisdiction. See T.C.A. § 40-35-103(1)(B); see also State v. Horne, 612 S.W.2d 186, 187 (Tenn. Crim. App. 1980); State v. Smith, 735 S.W.2d 859, 864 (Tenn. Crim. App. 1987) (holding that the trial court's finding that the sentence will have a deterrent effect cannot be merely conclusory but must be supported by proof). The problem, though, is that the defendant failed to include the presentence report as part of the record on appeal. Thus, we are in no position to conduct a proper de novo review.

In any event, however, we agree with the defendant's contention that the trial court did not have the authority to set the defendant's periods of confinement for the D.U.I. and D.O.R.L. to run concurrently while setting his periods of probation to run consecutively. If a defendant is sentenced to both confinement and probation, the probation must run in the same manner as the confinement. "The term 'sentence' includes both the period of incarceration and the period of probation. Thus, if the trial court orders the defendant's sentences to run consecutively, then each portion of his sentences must be so served." State v. Connors, 924 S.W.2d 362, 364 (Tenn. Crim. App. 1996). Thus, the case should be remanded for resentencing.

---

[1] We note that the sentencing judge did not preside over the defendant's trial.

8

### III. MOTION FOR A COURT REPORTER

The defendant argues that the trial court erred by denying his oral motion for a court reporter. He contends that he has been unduly prejudiced on appeal because his case involves complicated factual claims of witnesses for which transcription was necessary to convey an accurate picture of the trial. The state argues that because the defendant's Statement of the Evidence is sufficient to allow adequate review of the sufficiency of the evidence, any potential error was harmless, and the defendant was not prejudiced.

Initially, we note that indigent defendants have due process and equal protection rights to an appellate review as adequate as those defendants who can afford transcripts. See Mayer v. City of Chicago, 404 U.S. 189, 193, 92 S. Ct. 410, 413 (1971). This means that the state must provide an indigent defendant with "a record of sufficient completeness to permit proper consideration of his claims." Mayer, 404 U.S. at 194, 92 S. Ct. at 414 (citations omitted). However, a trial court's denial of a defendant's motion for a court reporter does not automatically create reversible error. See State v. Hammond, 638 S.W.2d 433, 434 (Tenn. Crim. App. 1982). Other methods of reporting trial proceedings may provide a defendant with a sufficiently complete record, including a statement of facts to which both sides have agreed. Mayer, 404 U.S. at 194, 92 S. Ct. at 414. In Tennessee, an appellant may prepare a Statement of the Evidence in lieu of a verbatim transcript if "no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available." T.R.A.P. 24(c); see State v. Gallagher, 738 S.W.2d 624, 626 (Tenn. 1987); Hammond, 638 S.W.2d at 434 (holding that a statement of the Evidence verified for accuracy and approved by both sides and the trial judge is adequate for appellate review of sufficiency of the evidence).

In light of the detailed Statement of the Evidence provided by the defendant and approved by both the district attorney and the trial court, we conclude that the defendant suffered no prejudice on appeal by not having a court reporter at trial. The Statement of the Evidence was adequate for this court to conduct its review of the sufficiency of the evidence.

The defendant also argues that the record is inadequate for this court to review whether the trial court failed in its capacity as the thirteenth juror. However, the defendant's motion for a new trial was transcribed, and it reflects that the trial court determined the evidence to be "adequate, probably overwhelming." Having concluded that the trial court exercised its capacity as the thirteenth juror, we have nothing else to review. See Burlison, 868 S.W.2d at 719. This issue is without merit.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the convictions for driving under the influence of an intoxicant, second offense, and driving on a revoked license are affirmed. The case is remanded to the trial court for a new sentencing hearing.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
John H. Peay, Judge

_____
David G. Hayes, Judge

10